UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jennifer Torres,<br><br>                       Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social Security,<br><br>                       Defendant. | Civil No. 3:19-cv-01160-TOF<br><br><br><br><br><br><br><br>October 20, 2020 |

## RULING ON PENDING MOTIONS

The Plaintiff, Jennifer Torres, appeals the final decision of the Defendant, Andrew Saul, Commissioner of Social Security ("the Commissioner"), on her applications for Title II Social Security Disability Insurance benefits and for Title XVI Supplemental Security Income benefits. This appeal is brought pursuant to 42 U.S.C. § 405(g). Currently pending are the Plaintiff's motion to reverse and remand for an award and calculation of benefits, or in the alternative, for an order to reverse and remand for a new hearing (ECF No. 17), and the Defendant's motion to affirm the decision of the Commissioner. (ECF No. 19.) For the reasons explained below, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

The Plaintiff raises several arguments on appeal. The scope of this decision is limited, however, to her arguments that the Administrative Law Judge ("ALJ") (1) failed to provide good reasons for assigning "no weight" to the opinion of her longtime treating physician, and (2) failed

1

to develop the record to resolve perceived discrepancies between that physician's opinion and his treatment notes. (ECF No. 17-2, at 11-12.) The Commissioner argues that the ALJ appropriately considered the treating physician's opinion and reasonably gave it "no weight." (ECF No. 19-1, at 7-8.) The Court agrees with the Plaintiff that the ALJ failed to provide good reasons for entirely discrediting the opinion. It also agrees that, before the ALJ could properly assign "no weight" to that opinion, she should have further developed the record by asking the treating physician to clear up the perceived inconsistencies. The Court will therefore remand the case for further development of the record and for rehearing, as discussed more fully in Section III of this opinion.

I.     **APPLICABLE LEGAL PRINCIPLES**

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ must follow a five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work . . . ." *Id.* At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national

economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.* The claimant bears the burden of proving her case at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (internal citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference. The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "either remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 263 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (remanding for rehearing but directing Commissioner "to calculate and dispense SSI benefits" if he could not bear his burden at Step Five). Remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999).

## II.     BACKGROUND

### A. Facts and Procedural History

The Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits on September 12, 2016, and for Supplemental Security Income ("SSI") benefits on November 4, 2016. (R. 323, 325.) She alleged a disability onset date of March 10, 2011 (*id.*), claiming she could not work because of physical impairments, including back pain and joint pain, and mental impairments, including depression, post-traumatic stress disorder, and anxiety. (*See* R. 177.) During the pendency of her claims, the Plaintiff returned to work on May 1, 2017 (R. 420), creating a closed period of disability that ended on April 30, 2017. *Zabala v. Astrue*, 595 F.3d 402, 406-07 (2d Cir. 2010) (finding that the period under review was the closed period from the date of the onset of the disability until the day the petitioner began engaging in substantial gainful activity). (R. 38-40.) On July 17, 2016 the Social Security Administration found that she was "not disabled." (R. 174, 175.) Her claims were denied on reconsideration on October 12, 2017. (R. 210, 211.) The Plaintiff then requested a hearing before an ALJ, which was held on August 10, 2018. (R. 54-105.) The ALJ issued an unfavorable decision, denying her claims on September 5, 2018 (R. 7-30),[1] and the Appeals Council denied her request for review on May 30, 2019. (R. 106.) On July 28, 2019, she sought review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed his motion to affirm on January 23, 2020. (ECF No. 19.)

---

[1]  Through counsel, the Plaintiff sought to reopen prior applications for both SSDI and SSI, dated November 6, 2014. (R. 434-36.) Those applications claimed the same onset date of March 10, 2011. (R. 306-09.) Both were denied initially on January 28, 2015 (R. 115, 130), and denied on reconsideration on June 25, 2015. (R. 119, 134.) The ALJ denied Plaintiff's request to reopen the prior applications because no new and material evidence had been presented. (R. 10.) The ALJ concluded, however, that *res judicata* did not apply to the present application because there had been "a change in regulation, ruling or legal precedent that was applied in reaching the final determination or decision on the prior application. . . . Specific to this case, there has been a revision to the listings of mental impairments." (R. 10.)

Portions of the Plaintiff's medical history will be set forth below, as necessary to explain the Court's decision.

### B. The ALJ's Decision

At Step One, the ALJ found that the claimant had not engaged in substantial gainful activity from the alleged onset date of March 10, 2011, to April 30, 2017. (R. 13.) She did, however, find that the Plaintiff had been engaging in substantial gainful activity as a Personal Care Assistant/Job Coach since May 1, 2017. (*Id.*) At Step Two, the ALJ found that the Plaintiff suffered from the severe impairments of degenerative disc disease, degenerative joint disease, and asthma. (*Id.*) The ALJ also found that the Plaintiff's obesity was nonsevere, and that "[her] weight, including the impact on her ability to ambulate, as well as her other body systems, [was] considered within the residual functional capacity." (R. 14.) Furthermore, the ALJ found that the Plaintiff's "medically determinable mental impairments of depressive disorder and post-traumatic stress disorder (PTSD) . . . [were] nonsevere." (*Id.*) At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or equal a listed disability enumerated in 20 C.F.R. § 404, Subpart P., App. 1. (*Id.*) Next, the ALJ determined that the Plaintiff retained the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is capable of frequently climbing ramps and stairs. She is capable of occasional stooping, crawling, and climbing ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She is capable of occasional exposure to unprotected heights.

(R. 17, 17-21.)

At Step Four, the ALJ found that the Plaintiff was capable of performing her past relevant work as a Home Attendant and Job Coach. (R. 21.) Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that the Plaintiff could perform the past relevant work of Home Attendant and Job Coach "as actually performed by the [Plaintiff] and generally performed

in the national economy." (R. 22.) In the alternative, there were other jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including package sorter, food counter, and price marker. (R. 22-23.) Accordingly, the ALJ determined that the Plaintiff was not disabled from the alleged onset date of March 10, 2011. (R. 23.)

## III. DISCUSSION

The Plaintiff argues that the ALJ erred by: (1) failing to find that the Plaintiff had severe mental impairments; (2) improperly minimizing all treating and examining physician opinions; (3) excluding relevant factors from the RFC description; and (4) failing to afford the Plaintiff "a full and fair hearing." (ECF No. 17-2, at 2.) As part of the second argument, she notes that the ALJ gave "no weight" to the opinion of her treating physician, and she claims this was error under the treating physician rule. (*Id.* at 11-12.) She also contends that before an ALJ can discount a treating physician's opinion on the ground that "the basis for [his] opinion was unclear," the ALJ must develop the record by "inquir[ing] directly" with the doctor. (*Id.*)

For the following reasons, the Court concludes that under the facts of this case, the ALJ erred by failing to provide good reasons for assigning "no weight" to the opinion of the treating physician, and by not affirmatively seeking clarification from the treating physician on perceived inconsistencies in that opinion. The Court therefore reverses and remands the Commissioner's decision without addressing the remaining arguments.

### A.  **The ALJ Erred in Assigning "No Weight" to the Treating Physician's Opinion**

The Plaintiff contends that the ALJ erred in assigning "no weight" to the opinion of her treating physician, Dr. Sanjeev Rao. In assigning "no weight," the ALJ reasoned that:

> Although Dr. Rao is a treating source, he has not provided mental health treatment to the claimant. Moreover, the opinion is a checklist style format that provides

>   minimal clinical findings to support the assessment. It is not supported by the treatment notes, nor consistent with the claimant's activities of daily livings [sic].

(R. 15, *see generally* ECF No. 17-2, at 11-12.) The Plaintiff argues that this weight assignment violated the treating physician rule. She also contends that the ALJ failed to develop the record by failing to inquire about the perceived inconsistencies with Dr. Rao. (*Id.*) The Commissioner contends that the ALJ assigned appropriate weight to Dr. Rao's opinion evidence. (*See generally* ECF No. 19-1, at 7-8.)

### i.      Violation of the Treating Physician Rule

The "treating physician rule" applies to claims filed before March 27, 2017. 20 C.F.R. § 416.927. When adjudicating claims filed before that date, "[t]he [Social Security Administration] recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). "According to this rule, the opinion of the Plaintiff's treating physician as to the nature and severity of the impairments is given 'controlling weight' so long as it 'is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Poole v Saul*, No. 3:19-CV-00927 (SALM), 2020 WL 2611230, at *5 (D. Conn. May 22, 2020) (quoting *Burgess*, 537 F.3d at 128). If the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, then the opinion is not entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

"[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Connolly v. Berryhill*, No. 3:18-CV-00185 (MPS), 2020 WL 772851, at *2 (D. Conn. Feb. 18, 2020) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). "In doing so, '[the ALJ] must explicitly consider the following, non-exclusive '*Burgess* factors': (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical

evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Estrella*, 925 F.3d at 95-96). "After considering these factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). "A failure to 'explicitly consider' these factors is a procedural error warranting remand unless a 'searching review of the record shows that the substance of the treating physician rule is not traversed.'" *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019). "To put it simply, a reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons for its weight assessment.'" *Id.*

In assessing the opinion of Dr. Rao, the ALJ acknowledged that he was the Plaintiff's treating physician, but provided three reasons for assigning "no weight" to his opinion: (1) Dr. Rao had not provided mental health treatment to the claimant; (2) the opinion was a checklist style format that provided minimal clinical findings to support the assessment; and (3) the opinion was not supported by the treatment notes, nor consistent with the claimant's activities of daily living. (R. 15.) Yet at a minimum, these reasons did not sufficiently address the first *Burgess* factor – the "frequen[cy], length, nature, and extent" of the treatment. *Connolly*, 2020 WL 772851, at *2.

In particular, the ALJ's reasoning did not account for the frequency and length of Dr. Rao's treatment. Dr. Rao was the Plaintiff's treating primary care physician. (R. 601-604.) He provided monthly care to the Plaintiff beginning in 2011, and treatments were ongoing with the date last seen of January 14, 2015, the day before he submitted his opinion. (R. 601.) Thus, when he opined that the Plaintiff's mental health limited her ability to carry out activities of daily living and social interaction (R. 602), he was working off of nearly four years of monthly observations. The Second

Circuit has held that this sort of "longitudinal" perspective is particularly relevant in the context of mental illness, *Estrella*, 925 F.3d at 98, and in this case the ALJ did not adequately explain why it was entirely undeserving of consideration.

As noted, an ALJ's failure to apply the *Burgess* factors is not necessarily reversible error if "a searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Id.* at 96. Another way of stating this principle is to say that a failure to consider the *Burgess* factors may be excused if "the record otherwise provides 'good reasons' for" the weight that the ALJ assigned to the treating physician's opinion. *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 n.2 (2d Cir. 2004)); *see also Stonick v. Saul*, No. 3:19-cv-01334 (TOF), 2020 WL 6129339, at *7 (D. Conn. Oct. 19, 2020) (although ALJ had not explicitly considered *Burgess* factors, the Court's "searching review" of the record revealed that the ALJ's weight assignment "was supported by 'good reasons'"). In this case, however, the Court is unable to conclude that the ALJ's reasons for entirely discounting Dr. Rao's opinion were "good reasons."

The ALJ's first reason was that Dr. Rao did not "provide[] mental health treatment to the claimant" (R. 15), but the record does not support this. Contrary to the ALJ's assertion, Dr. Rao did provide the Plaintiff with mental health care. His records confirm that he evaluated the Plaintiff's mental health symptoms; considered her for a higher level of care; and prescribed mental health medications like Depakote, Klonopin and Paxil. (R. 601-04.) The Plaintiff confirmed this in her hearing testimony; when asked whether Dr. Rao had "treated [her] for any mental health impairment," she said "[y]es . . . he's tried several different combinations of medications." (R. 89.)

If the ALJ had said that Dr. Rao did not provide *specialist* treatment, that would have been factually true, but it would not have been a "good reason" for entirely disregarding his opinion.

10

Dr. Rao is indeed a general practitioner, not a psychiatrist or other mental health specialist, but other courts in the Second Circuit have held that this is an insufficient reason for ignoring his opinion entirely. In *Daigle v. Saul*, for example, the claimant's primary care physician "saw [her] every three months," "repeatedly evaluated" her complaints, "prescribe[ed] medications" and "refer[ed her] to specialists. No. 3:19-cv-00724 (JAM), 2020 WL 5793354, at *4 (D. Conn. Sept. 28, 2020). Although he was not a specialist, the "frequency, length, nature, and extent of" his treatment "cut[] strongly in *favor* of granting controlling weight to [his] opinion." *Id.* (emphasis in original). Similarly, in *Smith v. Saul* the court rejected the claim that an ALJ could refuse to consider dementia and cognitive disorder diagnoses because they had been made by "general practitioners and not mental health specialists." No. 18-CV-148F, 2019 WL 2537297, at *5 (W.D.N.Y. June 20, 2019). The Court noted that the Commissioner provided "no authority for this novel argument which is contrary to . . . the relevant regulation." *Id.*; *see also Busby v. Berryhill*, No. 3:16-CV-664 (AWT), 2017 WL 3575893, at *3 (D. Conn. Aug. 18, 2017) (holding that ALJ violated treating physician rule and, in doing so, noting that "the court was particularly struck by the fact . . . the ALJ concluded that he would give no weight to [the treating physician's] opinion" (emphasis in original)).

Dr. Rao's status as a treating physician takes on added importance due to the Plaintiff's alleged impairments being related to her mental health. *See Corbeil v. Saul*, No. 17-CV-01321, 2019 WL 2590606, at *5 (W.D.N.Y. June 25, 2019) ("Where, as here, mental health treatment is at issue, the opinions of treating professionals take on added importance."); *Canales v. Comm'r of Social Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health."). The Plaintiff had a long-term treating psychiatrist

11

from 2002 until 2014, and the state agency attempted to get her records in 2014 and 2015 but was unable to do so. (R. 63.) The psychiatrist's office closed in 2016, and the psychiatrist was in federal prison at the time of the hearing. (*Id.*) The ALJ acknowledged this unavoidable gap in the record and noted that the then-incarcerated psychiatrist was the Plaintiff's only treating psychiatrist during those years. (*Id.*) Thus, by assigning "no weight" to Dr. Rao's opinion, the ALJ effectively eliminated all long-term observation and assessment of the Plaintiff's mental health. *See Corbeil*, 2019 WL 2590606, at *5 ("A mental health patient may have good days and bad days; she may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination.").

      The ALJ also disregarded Dr. Rao's opinion because she perceived it to be inconsistent with his treatment notes and with the Plaintiff's activities of daily living (R. 15), but before an ALJ can entirely ignore a treating physician on that ground, she must identify those inconsistencies. In *Ely v. Colvin*, for example, the court held that "[w]ithout identifying the alleged inconsistencies in the record, the ALJ has failed to provide any basis for rejecting [the treating physician's] opinions." No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016). Similarly, in *Marchetti v. Colvin* the court noted that "[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on . . . conclusory assertions of inconsistency with the medical record." No. 13-CV-02581 (KAM), 2014 WL 7359158, at *13 (E.D.N.Y. 2014) (collecting cases). And in *Crossman v. Astrue*, the court held that an ALJ's statement that the treating physician's opinion was "inconsistent with the evidence and record as a whole" was "simply not the 'overwhelming and compelling type of critique that would permit the Commissioner to overcome

an otherwise valid medical opinion.'") 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (quoting *Velazquez v. Barnhart*, No. 3:02-CV-1264 (MRK), 2004 WL 367614, at *10 (D. Conn. Feb. 19, 2004)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) ("[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."). In this case, the ALJ wrote that Dr. Rao's opinion was "not supported by the treatment notes, nor consistent with the claimant's activities of daily livings" (R. 15), but she did not identify the ways in which the opinion conflicted with the notes or the activities of daily living. Moreover, the Commissioner identified no such inconsistencies in his brief. (ECF No. 19-1, at 8) (conclusory statement that "the opinion was inconsistent with the record, including Plaintiff's treatment notes and activities of daily living").

Finally, the ALJ states that she gave "no weight" to Dr. Rao's opinion in part because the opinion was in a checklist style format that provided minimal clinical findings to support the assessment. While the checkbox nature of an opinion can contribute to a conclusion that the opinion deserves something less than controlling weight, *see Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (summary order), on its own it does not provide a "good reason" for disregarding the opinion entirely. In this case the ALJ should have contacted Dr. Rao and asked him to elaborate on his checkbox opinions, as discussed next.

### ii.     Failure to Develop the Record

"The Second Circuit has made clear that the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Cummings v. Saul*, No. 3:19-

CV-01440 (RAR), 2020 WL 5640532, at *3 (D. Conn. Sept. 22, 2020) (citing *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2))). "But before an ALJ can determine what weight to give the treating physician's opinion, the record must be complete." *Id.* (citing *Alford v. Saul*, 417 F. Supp. 3d 125, 140 (D. Conn. 2019)).

"An ALJ in a Social Security benefits hearing has an affirmative obligation to develop the record adequately." *Prince v. Berryhill*, 304 F. Supp. 3d 281, 287 (D. Conn. 2018) (citing *Rosa*, 168 F.3d at 79). "Although this obligation is heightened where the plaintiff is pro se, . . . the non-adversarial nature of Social Security benefits proceedings dictates that the obligation exists even when . . . the claimant is represented by counsel." *Id.* (internal citations and quotation marks omitted); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that the ALJ, unlike a judge in a trial, must himself affirmatively develop the record.") (internal quotation marks omitted). Failure to develop the record is reversible legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) ("When an ALJ does not fully develop[ ] the factual record, the ALJ commit[s] legal error.").

When an ALJ questions the basis for a treating physician's opinion "by asserting that it is contrary to the other findings of [the treating physician] and the other medical evidence of record, . . . the proper course of action is not to simply reject the physician's opinion." *Cummings v. Berryhill*, No. 3:16-CV-01372 (RAR), 2017 WL 4337103, at *3 (D. Conn. Sept. 30, 2017) (citing *Wade v. Colvin*, No. 3:15-CV-47 (DJS), 2016 WL 1170917, at *9 (D. Conn. March 24, 2016)). Instead, "[t]he ALJ must request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be resolved, the report is missing necessary information, or the report does not seem to be based on medically acceptable clinical diagnostic techniques." *Busby*, 2017 WL 3575893, at *2 (quoting *Toribio v. Astrue*, No. 06-CV-

6532 (NGG), 2009 WL 2366766, at *8 (E.D.N.Y. July 31, 2009)); *see also Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Petruck v. Berryhill*, No. 3:18CV715 (AWT), 2019 WL 2171265, at *4 (D. Conn. May 20, 2019).

In this case, the ALJ noted inconsistencies between Dr. Rao's opinion on the severity of the Plaintiff's mental health impairments and his treatment notes. Yet the Court must be " mindful of the Second Circuit's admonition that 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" *Sadusky v. Saul*, No. 3:19-CV-736 (RMS), 2020 WL 2730834, at *10 (D. Conn. Mary 26, 2020) (quoting *Rosa*, 168 F.3d at 79); compare with *Negron v. Colvin*, No. 15CV2515ADSAKT, 2017 WL 1194470, at *7 (E.D.N.Y. Mar. 31, 2017*), aff'd sub nom. Negron v. Berryhill*, 733 F. App'x 1 (2d Cir. 2018) (collecting cases) ("The Second Circuit has repeatedly held that ALJs may treat a treating course's medical opinion <u>less weight</u> where it contradicts their own treatment notes." (Emphasis added).) Merely stating there are inconsistencies – as the ALJ did here – does not allow her to dismiss the treating physician's opinion entirely without first making reasonable attempts to gain clarification from the treating physician. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.") There is no indication in the record that the ALJ attempted to seek clarification from Dr. Rao. *Cf. Cummings v. Saul*, 2020 WL 5640532, at *4 (holding ALJ fulfilled his duty to develop the record when he twice requested the treating physician clarify his opinion and received no response to the first request and a lackluster response to the second).

The submission of Dr. Rao's opinion by checklist form does not relieve the ALJ of her affirmative duty to develop the record. *See id.* at *5 (ALJ's reference to the treating physician's opinion as "electronic boilerplate . . . inherently suggest[ed] an insufficiency of detail requiring

more"); *Busby*, 2017 WL 3575893, at \*4 (observing it was "noteworthy that the ALJ gave no weight to [the treating physician's] opinions because, among other reasons, the doctor merely put checkmarks to primarily subjective symptoms, . . . but had the ALJ sought additional information because he felt the clinical findings were inadequate, such information [could] have been provided . . . "). Although the "Second Circuit has held that . . . standardized form opinions [that include checklists with limited space for additional information] are 'only marginally useful for purposes of creating a meaningful and reviewable factual record,'" *Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at \*3 (W.D.N.Y. Oct. 9, 2018) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004), the use of these forms does not automatically render a treating physician's opinion unworthy of any consideration.[2] *See, e.g., Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (assigning "little weight" to checklist-style form provided by treating physician).

### iii.   Conclusion

Accordingly, the Court concludes that the ALJ erred by not providing "good reasons" for the weight she assigned to Dr. Rao's opinion. *Guerra*, 778 F. App'x at 77. Encompassed within the ALJ's insufficient reasons is a failure to develop the record because she did not attempt to contact Dr. Rao to resolve the perceived inconsistency between his opinion on the one hand, and his treatment notes and the Plaintiff's activities of daily living on the other. *Schaal*, 134 F.3d at

---

[2] It does not escape the Court's notice that Dr. Rao was the treating physician in *Cummings v. Berryhill*, 2017 WL 4337103, and *Cummings v. Saul*, 2020 WL 5640532. The doctor evidently has a practice of assessing significant limitations in "conclusory . . . checklist format with little explanation." *Cummings v. Berryhill*, 2017 WL 4337103, at \*3. Had he taken the time to provide more of an explanation – and, in particular, to identify any medical or clinical findings that support his opinion – both this case and the two *Cummings* cases might arguably have been avoided.

Like the *Cummings* court, this Court "does not envy the ALJ's position." *Cummings v. Saul*, 2020 WL 5640532, at \*6. "But the law is clear; the ALJ has an affirmative duty to correct inconsistencies in the record." *Id.* This duty includes an obligation to inquire about any "significant inconsistency between Dr. Rao's opinion and the medical records." *Id.*

505; *Busby*, 2017 WL 3575893, at *4.  Remand is therefore warranted.  *Guerra*, 778 F. App'x 77 ("To put it simply, a reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons for its weight assessment.'"); *Cummings v. Saul*, 2020 WL 5640532, at *6 ("[B]ecause the Court finds that the ALJ did not fulfill his obligation to develop the record, the analysis stops there.") (citing *Johnson*, 817 F.2d at 986).

### B.     Remaining Arguments

Because the Court is remanding this matter for further development of the record related to the opinion of the Plaintiff's treating physician and, subsequently, reassessment of the proper weight to afford his opinion, it does not reach the Plaintiff's remaining arguments.  "The issue of whether an ALJ has satisfied his obligation to develop the record is one that must be addressed as a threshold issue."  *Camarota v. Comm'r of Soc. Sec.*, No. 3:19-CV-0133 (RMS), 2020 WL 132437, at *5 (D. Conn. Jan. 13, 2020) (internal quotation marks omitted).  The Court declines to address the Plaintiff's remaining arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety."  *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted); *see also Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *19 (D. Conn. March 14, 2018) (holding that because the case is "already being remanded for other reasons," and "because [the Plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis).

On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not discussed in this decision.  *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner

17

will address the other claims of error not discussed herein."); *see also Moreau v. Berryhill*, No. 3:17-CV-00396 (JHC), 2018 WL 1316197, at *4 (D. Conn. March 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

## IV.    CONCLUSION

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen*, 111 F. Supp. 3d at 263 (internal quotation marks omitted). Remand for calculation of benefits is inappropriate, however, when the record requires further development. "In deciding whether a remand is the proper remedy, [the Second Circuit has] stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts*, 388 F.3d at 385. Moreover, remand solely for calculation of benefits is improper unless the record contains "persuasive proof" of disability, *Rosa,* 168 F.3d at 83, which is not the case here. Therefore, an order for the calculation of benefits is not appropriate in this instance.

For the reasons stated, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this decision. In light of the Court's holdings, it need not reach the merits of the Plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner

for further administrative proceedings consistent with this opinion.  On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.  The Clerk is further instructed that, if any party appeals to this Court the decision made after this remand, any subsequent Social Security appeal is to be assigned to the undersigned.

It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge